**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SHONDA WALLACE, | : | Case No. 3:24-cv-304 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| ROCKING HORSE CHILDREN'S | : | |
| HEALTH CENTER D/B/A ROCKING | : | |
| HORSE COMMUNITY HEALTH | : | |
| CENTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

## ORDER

This matter is before the court upon Plaintiff Shonda Wallace's Motion to Compel Discovery (Doc. #21), Defendant Rocking Horse Children's Health Center's ("Defendant" or "Rocking Horse") Brief in Opposition (Doc. #23), and Plaintiff's Reply Memorandum in Support of Her Motion (Doc. #25).

## I.      Background

Plaintiff commenced this action on November 26, 2024, against Defendant, pursuant to 28 U.S.C. § 1331. (Doc. #1); (Doc. #15, *PageID* #125). Plaintiff alleges that she was wrongfully terminated by Defendant in violation of federal and state law. (Doc. #15, *PageID* #s 130–39). Both parties met with the undersigned for a status conference on September 26, 2025. (Doc. #20). During the status conference, Defendant was ordered to provide an updated privilege log. *Id.* Defendant provided the updated privilege log to Plaintiff on October 7, 2025. (Doc. #23-1, *PageID* #316). Thereafter, Plaintiff filed a motion to compel discovery on October 21, 2025. (Doc. #21).

Plaintiff seeks discovery of certain documents relevant to her termination at Rocking Horse. *Id.* at 173–75. Prior to her termination, Plaintiff served as the Chief Financial Officer ("CFO") of Rocking Horse. *Id.* at 173. Beginning in early 2024, Plaintiff began experiencing health complications and ultimately requested leave pursuant to the Family and Medical Leave Act ("FMLA"). *Id.* at 173–74. On October 14, 2025, Plaintiff met with Rocking Horse executives and was informed that she was being placed on administrative leave. *Id.* at 174. On October 25, 2025, Defendant allegedly stopped paying Plaintiff; and she was subsequently terminated. (Doc. #15, *PageID* #130).

Throughout this time—that is, before, during, and after Plaintiff's termination—various communications and documents were produced between Rocking Horse and its counsel. *See* (Doc. #23-1). These included numerous email communications, Executive Committee Notes, Personnel Committee Notes, and a Draft Separation Agreement. *Id.* at 317–20. As identified in their privilege log, Defendant claims that all of these communications and documents are protected from discovery because of attorney-client privilege or work product doctrine. *See id.*

More specifically, Defendant argues that all of its email communications—over 70 pages worth—are protected as "direct communications with counsel that clearly fall within the scope of attorney-client privilege." (Doc. #23, *PageID* #265–66). Further, Defendant asserts that the documents relating to the Draft Separation Agreement "were prepared by an attorney and constitute attorney work product" and therefore "there is no basis for their production." *Id.* at 266. Defendant maintains that the Executive Committee Notes and Personnel Committee Notes are protected by attorney-client privilege because these committee meetings were not mere business meetings; rather, they were held at the request of counsel where "legal advice was central, not incidental, to the ultimate outcome." *Id.* at 268.

Plaintiff, on the other hand, vehemently contests these arguments. *See* Doc. #25. Plaintiff argues that Defendant's updated privilege log remains deficient and that Defendant is improperly withholding relevant documents under the auspices of attorney-client privilege and the work product doctrine. *Id.* at 324. Put simply, Plaintiff states that Defendant is "preventing Ms. Wallace from accessing information necessary to litigate her case." *Id.* Accordingly, Plaintiff requests the Court to compel discovery of the alleged improperly withheld documents; or, in the alternative, to conduct an *in camera* review of these documents. *Id.* at 329.

## II.    Standard of Review

The Federal Rules of Civil Procedure provide that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). If the opposing party fails to produce requested discovery documents, a party may file a motion to compel. Fed. R. Civ. P. 37(a)(1). The non-moving party may protect documents from discovery by asserting that the requested documents are subject to attorney-client privilege or were prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3); Fed. R. Civ. P. 26(b)(5). However, "[t]he burden of establishing the existence of the privilege rests with the [party] asserting it." *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir. 1999); *see also United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) ("A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006)).

"Because this case is before the Court on federal question jurisdiction, federal law governs questions regarding the attorney-client privilege or work product protection." *Cherly & Co. v. Krueger*, No. 2:18-cv-1485, 2019 U.S. Dist. LEXIS 208875, at *5 (S.D. Ohio Dec. 4, 2019) (citing

*Talismanic Properties, LLC v. Tipp City*, Ohio, 309 F. Supp. 3d 488, 493 (S.D. Ohio 2017)); *see also Watson v. Ohio Ambulance Sols., LLC*, No. 1:20-cv-802, 2021 U.S. Dist. LEXIS 271514, at *7 (S.D. Ohio Nov. 23, 2021) (citing *Shahbabian v. Trihealth, Inc.*, No. 1:18-cv-790, 2019 U.S. Dist. LEXIS 174180, at *5 (S.D. Ohio Oct. 8, 2019)) (the court applies federal law to the rules governing attorney-client privilege despite any supplemental state law claims). Relevant to the instant motion are the legal standards governing privilege logs, attorney-client privilege, and the work product doctrine.

### A. Privilege Logs

Under the Federal Rules of Civil Procedure, when a party claims that communications or documents are protected from discovery due to attorney-client privilege or the work product doctrine, that party must describe the nature of the documents or communications to the extent that it "enable[s] other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). This has been interpreted to require the party asserting the protection to produce a privilege log. *See, e.g.*, *Mafcote, Inc. v. Fed. Ins. Co.*, No. 3:08-CV-11-S, 2010 U.S. Dist. LEXIS 46471, at *13–14 (W.D. Ky. May 11, 2010). In order to satisfy "the Federal Rules and justify a claim of privilege . . . a privilege log must contain sufficient factual content to allow the court to reach the conclusion that each element of the privilege is fulfilled." *Id.* at *14.

Courts require that privilege logs contain the following: (1) a description of the document; (2) the date the document was prepared; (3) the date of the document, if different from the date it was prepared; (4) the identities of who prepared the document; (5) the identities of who the document was prepared for and who the document was directed at; (6) the purpose of preparing the document; (7) the number of pages of the document; (8) the privilege being asserted; (9) and any other information necessary to assert the privilege. *Cooey v. Strickland*, 269 F.R.D. 643, 649

4

(S.D. Ohio 2010). Thus, Defendant's privilege log must include these elements while simultaneously illustrating that the elements of attorney-client privilege and the work product doctrine are satisfied.

### B.     Attorney-Client Privilege

The attorney-client privilege is the oldest privilege relating to confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of attorney-client privilege is "(1) to promote loyalty between lawyers and their clients; and (2) to encourage full disclosure by clients to their attorneys." *Dadosky v. Mid-Am. Conversion Servs., LLC*, No. 2:22-cv-02503, 2025 U.S. Dist. LEXIS 70543, at *6–7 (S.D. Ohio Apr. 14, 2025) (citing *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998)). However, because the privilege prevents the disclosure of otherwise relevant evidence, it is applied narrowly to "protect[] only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The Sixth Circuit has outlined the elements of attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed*, 134 F.3d at 355–56. Notably, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Upjohn*, 449 U.S. at 395.

Moreover, "it is now well settled that private corporations and other organizations may constitute clients for the purposes of attorney-client privilege." *Reed*, 134 F.3d at 356 (citing *Upjohn*, 449 U.S. at 389–90). This can lead to the intermingling of business advice and legal

advice. "Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Alomari v. Ohio Dep't of Pub. Safety*, No. 2:11-cv-00613, 2013 U.S. Dist. LEXIS 118754, at *6–7 (S.D. Ohio Aug. 21, 2013) (quoting *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)). Thus, the key inquiry is to analyze "whether the predominant purpose of the communication is to render or solicit legal advice." *Cooey*, 269 F.R.D. at 650 (quoting *Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 420 (2d. Cir. 2007)); *see In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785-ALM-KAJ, 2024 U.S. Dist. LEXIS 84091, at *11 (S.D. Ohio May 6, 2024) ("Whether the internal investigation's purpose was primarily business or human resources-related is crucial in determining whether the privilege exists, because the investigation's predominant purpose must be legal for the privilege to apply."). Put another way, attorney-client privilege "does not apply where the legal advice is merely incidental to business advice." *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (citing *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, MDL 997, 1995 U.S. Dist. LEXIS 7937 (N.D. Ill. 1995)).

### C.     Work Product Doctrine

The work product doctrine "protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *Roxworthy*, 457 F.3d at 593; Fed. R. Civ. P. 26(b)(3). To determine whether an alleged work product was created in anticipation of litigation, the Sixth Circuit adopted the "because of" test. *Roxworthy*, 457 F.3d at 593. This test has both an objective and a subjective component. *Id.* at 594. Specifically, courts applying this test must look at "(1) whether a document was created because of a party's subjective anticipation of litigation" and "(2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* Because documents prepared in the ordinary course of

business are not specifically prepared in anticipation of litigation, they are not covered by the "because of" test and thus not protected by the work product doctrine. *Id.* at 593.

### III.   Discussion

As noted above, Plaintiff requests the Court to compel discovery of the alleged improperly withheld documents relating to Plaintiff's termination or, in the alternative, to conduct an *in camera* review of these documents. (Doc. #25, *PageID* #329). Notably, Defendant does not dispute the relevance of the withheld documents. (Doc. #23, *PageID* #262). Nevertheless, Defendant asks the Court to deny Plaintiff's motion to compel on the grounds that the requested documents are protected by attorney-client privilege or the work product doctrine. *See id.* at 265–68.

#### A.   Privilege Log

First, the undersigned orders that Defendant update its privilege log to properly enable Plaintiff to assess its claims of privilege. Although Defendant's privilege log meets many of the requirements outlined by *Cooey*, 269 F.R.D. at 649, Defendant's clustering of email strings logged under a singular claim of privilege makes it near impossible to decipher how and to what extent the asserted privileges apply. *See* Doc. #23-1.

Whether or not emails within a string are required to be logged separately is a developing issue in case law, with courts coming to different conclusions. *Compare United States v. Davita, Inc.*, 301 F.R.D. 676, 685 (N.D. Georgia 2014) (requiring that "each withheld email within a string be logged in some fashion at least once.") *with Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007) (declining to adopt the view that each email within a string be separately logged). The Sixth Circuit has not yet addressed this issue. However, the majority view is that "individual emails within a string should be separately logged in some fashion." *Davita*, 301 F.R.D. at 685; *see, e.g.*, *In re Bystolic Antitrust Litig.*, No. 20-cv-5735, 2021 U.S. Dist. LEXIS 44042, at *11–12 (S.D.N.Y.

Mar. 9, 2021); *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 1:20-cv-00292, 2023 U.S. Dist. LEXIS 214655, at *15 (M.D. Pa. Dec. 1, 2023), *rev'd on other grounds*, 2024 U.S. Dist. LEXIS 77113 (M.D. Pa. Apr. 29, 2024); *Doe v. Intermountain Health Care, Inc.*, No. 2:18-CV- 807-RJS-JCB, 2021 U.S. Dist. LEXIS 9078, at *6 (D. Utah Jan. 16, 2021); *Townhouse Rest. of Oviedo v. Nuco2*, No. 19-14085-CIV-ROSENBERG/MAYNARD, 2020 U.S. Dist. LEXIS 108809, at *3–4 (S.D. Fla. May 5, 2020).

The undersigned adopts the majority view because it comports with the Federal Rules of Civil Procedure, as it properly "enable[s] other parties to assess the claim" of privilege being asserted. Fed. R. Civ. P. 26(b)(5); *see, e.g.*, *Davita*, 301 F.R.D. at 685 ("Logging the details of only the ultimate, top, email would not accurately state how many separate communications are included in the withheld document, and who received which of those communications. Such an approach may deprive Plaintiffs, and a reviewing Court, of the ability to assess the claim of privilege."); *In re Bystolic Antitrust Litig.*, 2021 U.S. Dist. LEXIS 44042, at *11 ("Requiring privilege logs to include only one entry for each email thread containing withheld emails would limit the ability of the parties and the Court to effectively evaluate the basis of the privilege asserted."); *Townhouse Rest. Of Oviedo*, 2020 U.S. Dist. LEXIS 108809, at *3–4 (Requiring each email in a string to be individually logged "makes sense because a string of emails consists of several individual communications that just happen to be physically linked as one document because of how, when and to whom they were sent or forwarded. Logging them collectively as a 'email thread' does not accurately describe how many separate communications were involved, who received those communications and how they are privileged communications.").

In the present case, one of the first entries in Defendant's privilege log—identified as Bates No. RH000255-74—illustrates the issue with logging a string of email communications under a

8

singular claim of privilege. *See* Doc. #23-1, *PageID* #317. As evidenced by the numbering system––that is, 000255-74—this singular entry contains nearly twenty pages of email communications. *Id.* Moreover, it lists the document type as "Multiple email communications"; it lists five different dates spanning the course of fourteen days; and it lists seven different authors and seven different recipients, many of whom are non-attorneys. *Id.* Finally, it asserts the protection of attorney-client privilege and the work product doctrine with the following reason: "Counsel actively communicating with Rocking Horse Board Members and HR Director, rendering legal analysis and advice and answering questions to develop strategies related to Plaintiff's pre-suit claims, possible early resolution as well as Plaintiff's employment with Rocking Horse." *Id.*

Although this reasoning could be sufficient to justify a claim of privilege, it is unclear that this reasoning applies to nearly twenty pages of email communications when there are multiple non-attorneys listed as authors and recipients, and the communications span a period of fourteen days. Again, that is not to say that mere communication between non-attorneys destroys the privilege. *Corkrean v. Drake Univ.*, No. 4:21-cv-00336-RGE-SHL, 2022 U.S. Dist. LEXIS 10156, at *7 (S.D. Iowa Jan. 3, 2022) (stating that "[c]ourts overwhelmingly recognize that a communication is not *per se* unprivileged simply because it is solely between non-attorneys."). However, as the email communications are currently logged, it is impossible for Plaintiff, or this Court, to properly evaluate Defendant's claim of privilege.

Thus, the undersigned **ORDERS** Defendant update its privilege log to properly enable Plaintiff to assess Defendant's claims of privilege within fourteen days. In doing so, Defendant is not required to log an email multiple times if it appears more than once in an email string. *See Davita*, 301 F.R.D. at 685. Rather, it is merely required that "each withheld email within a string be logged in some fashion at least once." *Id.*

9

### B.      Executive Committee Notes and Personnel Committee Notes

The second issue is whether Defendant may be compelled to disclose its Executive Committee Notes and Personnel Committee Notes, listed as Bates Nos. RH000302-03 and RH000305-07 respectively. (Doc. #23-1, *PageID* #318–19). Plaintiff argues that these documents are not privileged because, in essence, they are the product of business meetings where counsels' presence was incidental to the decisions being made. *See* Doc. #21, *PageID* #183. Defendant, on the other hand, asserts that counsels' presence was not incidental to the purpose of either meeting, but rather "these meetings were held for the sole purpose of discussing Plaintiff's situation, including navigating the pre-suit waters" and "Rocking Horse's counsel was heavily involved and facilitated the discussion." (Doc. #23, *PageID* #266). To properly address this issue, a review of the relevant case law is instructive.

In *Dadosky v. Mid-Am. Conversion Servs., LLC*, No. 2:22-cv-02503, 2025 U.S. Dist. LEXIS 70543, at *3–4 (S.D. Ohio Apr. 14, 2025), an employee was fired for her failure to take the COVID-19 vaccine, and she subsequently filed a lawsuit against her employer and its senior contractor on the grounds of failure to accommodate her religious beliefs, retaliation, and employment discrimination. During the discovery process, plaintiff sought disclosure of certain communications relating to the senior contractor's Accommodations Review Committee ("ARC"). *Id.* at *5–6. The ARC included members of the contractor's management team, human resources, and its in-house counsel. *Id.* at *5. The ARC met weekly during the contractor's accommodations period to discuss whether employees were exempt from taking the COVID-19 vaccine. *Id.* During these meetings, the ARC "took notes[] and kept minutes." *Id.* The defendant-contractor objected to the discovery of these communications on the basis of attorney-client privilege. *Id.* at *5–6. In support of its objection, the contractor contended that ARC was created "for the purpose of

10

determining its legal rights" with respect to the federal vaccine mandate and the accompanying accommodations requests. *Id.* at *8. The plaintiff argued that ARC was engaged in a primarily business function where "the predominant purpose was to decide employment matters"—i.e., its purpose was to decide "whether to grant [p]laintiff's accommodation request or to terminate her." *Id.* at *9.

Ultimately, the *Dadosky* court concluded that the contractor failed to carry its burden of showing that the ARC communications "were for the purpose of rendering or soliciting legal advice." *Id.* at *19. The court reasoned that it was "reticent to credit [the contractor's] 'self-serving declaration'" which failed to establish that its in-house counsel "was acting in a legal capacity as a[n] [ARC] member." *Id.* at *21. Accordingly, the court allowed the contractor to submit additional evidence to clarify the basis of attorney-client privilege regarding the ARC meetings and ordered the contractor to submit for *in camera* review "an affidavit and any supporting documentation setting forth in detail the communications of the [ARC] meetings." *Id.* at *22.

In *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000), a plaintiff-employee sought discovery of communications made during his termination. Specifically, the defendant-company decided to terminate plaintiff through a meeting with its Personnel Action Review Committee (PARC), and plaintiff sought discovery of the communications made during that meeting. *Id.* As required by the defendant's disciplinary policy, its senior attorney was present at the meeting as a member of PARC. *Id.* at 292. Accordingly, the defendant argued that the PARC communications were protected by attorney-client privilege because their senior attorney "was acting as a legal advisor" and "the primary purpose of the PARC meetings was to render legal advice." *Id.* at 293.

11

The *Neuder* court found that the PARC served a predominantly business purpose and that the defendant's senior attorney was serving "in a predominantly non-legal capacity." *Id.* at 293–95. In doing so, it found that the purpose of the PARC meeting was to terminate plaintiff, which it believed to be predominantly a business purpose. *Id.* at 293–94. Further, the court found that the senior attorney's role as a member and chairperson of PARC was dispositive in showing that he acted in a non-legal capacity. *Id.* at 295.

Finally, in *Marten v. Yellow Freight Sys.*, No: 96-2013-GTV, 1998 U.S. Dist. LEXIS 268 (D. Kan. Jan. 6, 1998), a terminated employee sought discovery of the meeting minutes at which his company's Employee Review Committee ("ERC") decided to terminate him. *Id.* at *4. The defendant-company objected on the grounds of attorney-client privilege, claiming that the minutes "contain[ed] material discussed between and among [] employees and [in-house counsel] for purposes of rendering legal advice on how to address plaintiff's disciplinary problems." *Id.* It also objected on the grounds of work product because the minutes were drafted by in-house counsel "in anticipation of litigation." *Id.* at *4–5. Notably, defendant's in-house counsel was acting as a voting member of the ERC. *Id.* at *20–21.

The *Marten* court sustained plaintiff's motion to compel and required disclosure of the meeting minutes. *Id.* at *32. In coming to its decision, it held that the ERC meeting minutes were not protected by attorney-client privilege. *Id.* at *22–27. It reasoned that although the ERC meeting may have "include[d] consideration of legal consequences of a proposed employment action[,]" the meeting's primary function "appear[ed] to be a decision of what employment action to take against an employee." *Id.* at *22. Thus, it stated, "the business purposes of such a decision predominate the legal issues." *Id.* Moreover, it noted that in-house counsel's position as a voting member of the ERC illustrated that he "was not acting merely as an attorney rendering legal

12

advice." *Id.* at *23. And it rejected the defendant's claim of work product protection because it failed to show that the primary purpose of creating the meeting minutes was in anticipation of litigation. *Id.* at *30.

Based on the foregoing, the undersigned **ORDERS** Defendant to submit its Executive Committee Notes and Personnel Committee notes to the Court for *in camera* review within fourteen days. It is unclear whether either committee meeting, or accompanying set of notes, served a predominantly legal purpose. *See* Doc. #23-1, *PageID* #318–19. Both communications assert protections of attorney-client privilege and the work product doctrine. *Id.* As for the reason the privileges are asserted, Defendant indicates for the Executive Committee Notes: "Counsel was present for discussions and actively participating by rendering legal advice which is reflected in this document. The meeting was held for the purpose of discussing Plaintiff's possible severance." *Id.* at 318. For the Personnel Committee Notes, Defendant states the following reason:

> Counsel was present for discussions and actively participating by rendering legal advice, and the meeting was held for the sole purpose of discussing a potential severance offer to Plaintiff. All discussions were held at the request of counsel with counsel present. Employment decisions were made regarding Plaintiff based upon the advice given by legal counsel, which advice is detailed in the document.

*Id.* at 319.

This language makes clear that each committee meeting was held for the "purpose of discussing a potential severance offer to Plaintiff." *Id.* at 318–19. Discussing a potential severance offer is comparable to a meeting where the purpose is to discuss an employee's termination. Both the *Neuder* and *Marten* courts, as discussed above, found that such a decision serves a predominantly business purpose. *See Neuder*, 194 F.R.D. at 293–94; *Marten*, 1998 U.S. Dist. LEXIS 268, at *22 (stating that when a meeting's primary function concerns what employment action to take against an employee, it serves a predominantly business purpose). Moreover, it is

difficult to credit Defendant's "self-serving declaration" that "all discussions were held at the request of counsel with counsel present" and that counsel was "actively participating by rendering legal advice" when there is little evidence to support such a claim. *See Neuder*, 194 F.R.D. at 295; (Doc. #23-1, *PageID* #318–19); *see also Dadosky*, 2025 U.S. Dist. LEXIS 70543, at *20–21 (taking into consideration that defendant's counsel did not provide an affidavit to help illustrate the purpose of the committee discussions at issue).

Defendant attempts to distinguish the instant case from *Dadosky*, *Neuder*, and *Marten* in its Brief in Opposition to Plaintiff's Motion to Compel. (Doc. #23, *PageID* #267–68). First, Defendant attempts to distinguish itself from *Dadosky* on the grounds that no employment action was taken as a result of the meeting in that case. *Id.* at 267. While it is true that the committee in *Dadosky* did not expressly make an employment decision like hiring, firing, or offering severance, this fact makes little difference. Both *Dadosky* and the instant case concern an employment-based cause of action where a terminated employee seeks discovery of communications had during committee meetings. Not to mention that the committee's decision in *Dadosky* ultimately led to the plaintiff's firing, even if the committee did not make that decision directly. Defendant further attempts to distinguish its case on the grounds that *Dadosky* contained "insufficient evidence in the record to determine whether the attorneys on the committee were acting in a legal capacity." *Id.* However, as discussed above, there is insufficient evidence here to determine the purpose of Defendant's committee meetings. If the purpose of the meetings was predominantly a business purpose, then attorney-client privilege may not apply regardless of the presence of Defendant's attorneys. Moreover, even if Defendant's attorneys were present and acting in a legal capacity, that does not mean that all communications made during the committee meetings are automatically protected. *See Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 619 (D. Kan. 2001)

14

(holding that communications made between committee members were not protected by attorney-client privilege while communications from committee members to counsel for the purpose of obtaining legal advice were protected).

Next, Defendant attempts to distinguish its case from *Neuder* and *Marten* for the following reasons: (1) because the attorneys present were outside counsel and not Rocking Horse employees or board members, "they could not have been acting in a business capacity"; and (2) Rocking Horse's board was not required to meet on the issue, but rather these meetings were held for the purpose of rendering legal advice that was solicited by Rocking Horse employees. (Doc. #23, *PageID* #268). As to the first point, it is true that the committee meetings in question would more likely resemble business meetings if the attorneys present served on the committees. *See Marten*, 1998 U.S. Dist. LEXIS 268, at *23 ("Membership on a committee which decides if an employee should be terminated . . . may lead to an inference that the attorney, at least in part, was acting in a non-legal capacity."). However, the mere fact that Defendant's attorneys were not employees or board members is not sufficient to show that the committee meetings were held for a predominantly legal purpose. *See Lewis*, 203 F.R.D. at 619 (finding that communications made between committee members were not protected by attorney-client privilege despite the presence of outside counsel and in-house counsel, both of whom were non-committee members). Similarly, although it may be true that Rocking Horse's board was not required to meet on the issue, that fact alone does not warrant protection by attorney-client privilege. And again, as discussed above, it remains unclear whether the predominant purpose of these meetings was for rendering or soliciting legal advice.

Finally, to the extent that Defendant wished to protect the Executive Committee Notes or Personnel Committee Notes through the work product doctrine, it failed to make the necessary

15

arguments to do so. Defendant made no argument that these documents were prepared in anticipation of litigation other than labeling each entry in its privilege log with "work product" as a reason for protection. (Doc. #23-1, *PageID* #318). This is not enough to overcome the burden of establishing the work product privilege. *Cf. Dadosky*, 2025 U.S. Dist. LEXIS 70543, at \*7–8 (citing *United States v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006)) ("Blanket claims of privilege or conclusory assertions are generally insufficient to carry this burden."). Likewise, Defendant fails to make any argument regarding protection of the Draft Separation Agreement— labeled Bates No. RH000385-92—other than stating that it was "prepared by an attorney and constitute[s] attorney work product." (Doc. #23, *PageID* #266).

Accordingly, Plaintiff's motion to compel (Doc. #21) is hereby **DENIED.** However, Plaintiff's request for *in camera* review (Doc. #21) is hereby **GRANTED**. Defendant shall produce the Executive Committee Notes, Personnel Committee Notes, and Draft Separation Agreement— listed as Bates Nos. RH000302-03, RH000305-07, and RH000385-92 respectively——unredacted for *in camera* review within fourteen days of this order. Finally, Defendants must file an updated privilege log identifying each withheld email within a string at least once, and it must do so within fourteen days of this Order.

Defendant is **ADVISED** that its failure to comply with this Order may result in the waiver of its asserted privileges. *See* Fed. R. Civ. P. 26(g).

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff Shonda Wallace's Motion to Compel Discovery (Doc. #21) is **DENIED**; and

2. Plaintiffs request for *in camera* review (Doc. #21) is **GRANTED**; and

3.       Defendant shall submit the documents identified above for *in camera review* on or before July 7, 2026; and

4.       Defendant shall file an updated privilege log on or before July 7, 2026.

June 23, 2026                                           *s/Peter B. Silvain, Jr.*

                                                                Peter B. Silvain, Jr.
                                                                United States Magistrate Judge

17